UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASSOCIATION OF CONTRACTING PLUMBERS OF THE CITY OF NEW YORK, INC.; PLUMBING-HEATING COOLING CONTRACTORS–NATIONAL ASSOCIATION; PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA; NEW YORK STATE ENERGY COALITION, INC.; THE PLUMBING FOUNDTATION CITY OF NEW YORK, INC.; LICENSED PLUMBING ASSOCIATION NEW YORK CITY, INC., d/b/a/ MASTER PLUMBERS COUNCIL OF THE CITY OF NEW YORK; and BUILDING INDUSTRY ASSOCIATION OF NEW YORK CITY, INC., | CIVIL ACTION NO. 1:23-cv-11292-RA |
| Plaintiffs, | |
| v. | |
| CITY OF NEW YORK, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................iii

PRELIMINARY STATEMENT .....................................................................................................1

BACKGROUND ............................................................................................................................2

I.  LOCAL LAW 154 ...............................................................................................................2

II. PROPOSED INTERVENORS ............................................................................................4

    A.  WE ACT for Environmental Justice .......................................................................4

    B.  NY-GEO ..................................................................................................................7

III. THE LAWSUIT ...................................................................................................................9

ARGUMENT ..................................................................................................................................9

I.  THIS MOTION IS TIMELY, AND PERMISSION TO INTERVENE WILL
    NEITHER DELAY THE ACTION NOR PREJUDICE THE ADJUDICATION
    OF ANY PARTY'S RIGHTS................................................................................................12

II. WE ACT AND NY-GEO HAVE A STRONG INTEREST IN DEFENDING THE
    VALIDITY OF AN ORDINANCE THAT THEY SUPPORTED AND THAT
    DIRECTLY BENEFITS THEIR MEMBERS, AND THEIR DEFENSE TURNS
    ON A COMMON QUESTION OF LAW AND FACT SHARED WITH THE
    MAIN ACTION.....................................................................................................................12

III. WE ACT AND NY-GEO'S INTERVENTION WILL PROMOTE
    DEVELOPMENT OF THE FACTUAL RECORD AND FAIR ADJUDICATION
    OF THE UNDERLYING LEGAL ISSUES. ......................................................................16

IV. PERMISSIVE INTERVENTION DOES NOT REQUIRE THAT THE CITY'S
    REPRESENTATION BE INADEQUATE..........................................................................19

CONCLUSION..............................................................................................................................20

## TABLE OF AUTHORITIES

**CASES**

**Page number(s)**

*335-7 LLC v. City of New York*,
    No. 20-CIV-1053, 2020 WL 3100085 (S.D.N.Y. June 11, 2020) ..............................13. 17

*Allco Fin. Ltd. v. Etsy*,
    300 F.R.D. 83 (D. Conn. 2014)........................................................................................19

*In re Application of Bm Brazil 1 Fundo de Investimento em Participacoes Multistratégia*,
    No. 23-MISC-208, 2024 WL 555780 (S.D.N.Y. Jan. 18, 2024) .....................................10

*Ass'n of Conn. Lobbyists LLC v. Garfield*,
    241 F.R.D. 100 (D. Conn. 2007)...............................................................................15, 19

*Bldg. & Realty Inst. of Westchester and Putnam Cnties., Inc. v. New York*,
    No. 19-CV-11285, 2020 WL 5658703 (S.D.N.Y. Sep. 23, 2020).......................... *passim*

*CIFI Latam, S.A. v. Tauch*,
    No. 19-CV-05607, 2020 WL 1164687 (S.D.N.Y. Mar. 11, 2020) ...................................13

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*,
    170 F.R.D. 93 (E.D.N.Y. 1996)..............................................................................14–15, 16

*Conn. Fine Wine & Spirits, LLC v. Harris*,
    No. 16-cv-1434, 2016 WL 9967919 (D. Conn. Nov. 8, 2016).........................................16

*Floyd v. City of New York*,
    770 F.3d 1051 (2d Cir. 2014)..................................................................................9–10, 12

*Friends of E. Hampton Airport, Inc. v. Fed. Aviation Admin.*,
    No. 15-CV-0441, 2016 WL 792411 (E.D.N.Y. Feb. 29, 2016) ......................................13

*H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*,
    797 F.2d 85 (2d Cir. 1986)..............................................................................................11

*Hartford Fire Ins. Co. v. Mitlof*,
    193 F.R.D. 154 (S.D.N.Y. 2000) .....................................................................................12

*Herdman v. Town of Angelica*,
    163 F.R.D. 180 (W.D.N.Y. 1995)....................................................................................15

*Home Ins. Co. v. Liberty Mut. Ins. Co.*,
    No. 87-CV-00675, 1990 WL 188925 (S.D.N.Y. Nov. 20, 1990)....................................12

*Hulinsky v. Cnty. of Westchester*,
    No. 22-CV-06950, 2023 WL 3162428 (S.D.N.Y. Apr. 28, 2023) .............................12, 13

*Human Servs. Council of New York v. City of New York*,
    No. 21-CIV-11149, 2022 WL 4585815 (S.D.N.Y. Sept. 29, 2022) ........................ *passim*

*McNeil v. N.Y.C. Hous. Auth.*,
    719 F. Supp. 233 (S.D.N.Y. 1989)..................................................................................16

*Miller v. Silbermann*,
    832 F. Supp. 663 (S.D.N.Y. 1993).......................................................................10, 16, 17

*New York v. Scalia*,
    No. 20-cv-1689, 2020 WL 3498755 (S.D.N.Y. June 29, 2020) .................................15, 20

*New York v. U.S. Dep't of Health & Human Servs.*,
    No. 19-Civ-4676, 2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019)....................16, 18–19, 20

*New York v. U.S. Immigration & Customs Enforcement,*
    No. 19-cv-8876, 2019 WL 7816835 (S.D.N.Y. Dec. 17, 2019) .......................................10

*N.Y. Pub. Interest Rsch. Grp. v. Regents of Univ. of N.Y.,*
    516 F.2d 350 (2d Cir. 1975)...........................................................................................15, 20

*Olin Corp v. Lamorak Ins. Co.,*
    325 F.R.D. 85 (S.D.N.Y. 2018) .....................................................................................10, 13

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.,*
    467 F.3d 238 (2d Cir. 2006)................................................................................................10

*Rodriguez v. It's Just Lunch, Int'l,*
    No. 07-CV-09227, 2013 WL 1749590 (S.D.N.Y. Apr. 23, 2013) ...................................14

*S.E.C. v. Credit Bancorp, Ltd.,*
    No. 99-CV-11395, 2000 WL 1170136 (S.D.N.Y. Aug. 16, 2000)....................................14

*Spangler v. Pasadena City Bd. of Educ.,*
    552 F.2d 1326 (9th Cir. 1977) .....................................................................................11, 16

*Tachiona ex rel. Tachiona v. Mugabe,*
    186 F. Supp. 2d 383 (S.D.N.Y. 2002)..................................................................................2

*United States v. Int'l Bus. Machines Corp.,*
    62 F.R.D. 530 (S.D.N.Y.1974) ..........................................................................................12

*United States v. N.Y.C. Hous. Auth.,*
    326 F.R.D. 411 (S.D.N.Y. 2018) ..................................................................................18, 20

*United States v. Yonkers Bd. of Educ.,*
    801 F.2d 593 (2d Cir. 1986)...............................................................................................12

*U.S. Postal Serv. v. Brennan,*
    579 F.2d 188 (2d Cir. 1978)........................................................................................10, 16

*Windsor v. United States,*
    797 F. Supp. 2d 320 (S.D.N.Y. 2011)...................................................................................2

## NEW YORK CITY LAWS

N.Y.C. Loc. L. No. 154 (2021)..................................................................................3, 4, 8, 14

    N.Y.C. Admin. Code § 24-177.1 ................................................................................3

    N.Y.C. Admin. Code § 28-506.1 ................................................................................3

## OTHER AUTHORITIES

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1902
    (3d ed. 2023) ......................................................................................................................10

Am. Pub. Health Ass'n, Policy No. 20225, *Gas Stove Emissions Are a Public Health Concern*
    (Nov. 8, 2022), https://www.apha.org/Policies-and-Advocacy/Public-Health-Policy-
    Statements/Policy-Database/2023/01/18/Gas-Stove-Emissions........................................7

Fed. R. Civ. P. 24(b)(1)(B) ..........................................................................................9, 10, 14

Gary Adamkiewicz et al., *Moving Environmental Justice Indoors: Understanding Structural
    Influences on Residential Exposure Patterns in Low-Income Communities,*
    101 Am. J. Pub. S238 (2011), https://doi.org/10.2105/AJPH.2011.300119......................6

Lisa K. Baxter et al., *Predictors of Concentrations of Nitrogen Dioxide, Fine Particulate Matter, and Particle Constituents Inside of Lower Socioeconomic Status Urban Homes*, 17 J. Exposure Sci. & Env't Epidemiology 433 (2007), https://www.nature.com/articles/7500532 ........................................................................7

N.Y.C. Mayor's Off. of Sustainability, Geothermal Systems and their Application in New York City (Feb. 2015),  http://www.nyc.gov/html/planyc/downloads/pdf/publications/2015_Geothermal.pdf ........................................................................................................8

Nat'l Ctr. for Healthy Hous., *Studying the Optimal Ventilation for Environmental Indoor Air Quality* (Apr. 2022), https://nchh.org/resource-library/report_studying-the-optimal-ventilation-for-environmental-indoor-air-quality.pdf........................................................7

Order Granting Motions, *Rivera v. Wash. State Bldg. Code Council*, No. 23-cv-03070 (E.D. Wash. June 12, 2023), ECF No. 34...............................................11

## PRELIMINARY STATEMENT

Proposed Intervenors WE ACT for Environmental Justice and New York Geothermal Energy Organization file this brief in support of their motion to intervene permissively under Federal Rule of Civil Procedure 24(b)(1)(B) to defend the validity of Local Law 154, which prohibits the combustion of fossil fuels in many of the buildings that will be constructed in the City. In enacting Local Law 154, the City of New York (the "City") sought to respond to the public health challenge posed to New Yorkers by indoor air pollution, and to address the urgency of the climate crisis. Local Law 154 is one piece of a broader campaign by the City to reduce our dependence on the fossil fuels that make us sick and threaten our city, state, and planet.

Trade associations and a union representing members who derive economic benefits from the use of fossil fuels in New York buildings ask the Court to strike down Local Law 154. They claim that the law, which does not set energy conservation standards for any appliances, is nonetheless preempted by the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§ 6201–6422, a law that preserves the primacy of the Department of Energy's energy conservation standards over competing state and local specifications. Compl. ¶¶ 1–2, ECF No. 1. As the accompanying Proposed Memorandum of Law in Support of Dismissal demonstrates, the Plaintiffs' claims should be dismissed at the outset because EPCA does not preempt laws that regulate health and safety, rather than operating as energy conservation measures.

WE ACT For Environmental Justice ("WE ACT") and the New York Geothermal Organization ("NY-GEO") seek to intervene permissively in this action to defend their interests, which Local Law 154 protects. WE ACT played a central role in securing passage of Local Law 154, and its expertise on the public health and environmental benefits that the clean energy transition delivers to WE ACT's members and to New Yorkers at large has been recognized by lawmakers and administrative agencies in the city and state. By addressing indoor air pollution,

the law provides critical protection to WE ACT's members. *See* Proposed Mem. of Law Section II.A. NY-GEO's members are key to the effective implementation of Local Law 154, and the industry they represent is specifically identified in the statute. They have a strong interest in defending Local Law 154, which safeguards New York City's ability to address the climate change crisis through building electrification. *See* Proposed Mem. of Law Section II.B.

Proposed Intervenors will contribute to the full and fair adjudication of this case. WE ACT and NY-GEO can shed light on the distinction between Local Law 154's reach and the scope of EPCA, and on the consequences for New Yorkers that Plaintiffs' radically broad reading of EPCA's preemption clause would bring about. *See* Proposed Mem. of Law Sections II–III. Should this case proceed to adjudication of the merits, or should the Plaintiffs seek preliminary relief, WE ACT and NY-GEO are also well-situated to ensure that the record before this Court is fully developed.

While the City does not oppose WE ACT and NY-GEO's motion for permissive intervention, Plaintiffs have informed WE ACT and NY-GEO that they do not consent to this motion.[1]

## BACKGROUND

### I.     LOCAL LAW 154

The widespread indoor combustion of fossil fuels in New York City causes local and global harms that directly threaten New Yorkers' health and safety. First, combustion of fossil fuels in New York buildings is a primary source of indoor air pollution, which harms lung and

---

[1] As the City has not yet filed an Answer and is responding to the Complaint by moving to dismiss, Proposed Intervenors have filed an accompanying Proposed Memorandum of Law in Support of Dismissal rather than a pleading. *See Windsor v. United States*, 797 F. Supp. 2d 320, 325 (S.D.N.Y. 2011) ("Where ... the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements." (quoting *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002))).

heart health and exacerbates the health disparities suffered by low-income New Yorkers and New Yorkers of color. *See, e.g.*, WE ACT, *Out of Gas, In with Justice* 2 (2021), Jessel Decl. Ex. C. Second, combustion of fossil fuels in buildings is the source of the overwhelming majority of New York City's greenhouse gas emissions, emissions which contribute to the climate change crisis that jeopardizes the future of New Yorkers and of New York City itself. *See* Compl. Ex. A at 2, ECF No. 1-1 ("The fossil fuels used to heat, cool, and power our buildings are responsible for nearly 70% of greenhouse gas emissions in New York City.").

Local Law 154 reduces the City's dangerous combustion of fossil fuels by setting a strict emissions limit on indoor combustion in new buildings. Once the limit takes effect, "[n]o person shall permit the combustion of any substance that emits 25 kilograms or more of carbon dioxide per million British thermal units of energy, as determined by the United States energy information administration, within such building." N.Y.C. Loc. L. No. 154 (2021) (codified at N.Y.C. Admin. Code §§ 24-177.1, 28-506.1). The emissions restriction phases in in stages: newly constructed buildings of fewer than seven stories are subject to the limit beginning January 1, 2024, while new buildings with seven or more stories become subject to the limit beginning July 2, 2027. N.Y.C. Admin. Code § 28-506.1(1) to (2). Buildings for which "an application for the approval of construction documents" is submitted before the effective date are not subject to the law. *Id.* The law contains numerous exceptions, including for fuel used in equipment that is used intermittently, or on an emergency basis, or for standby power. *Id.* §§ 24-177.1(c); 28-506.1(9). The law also exempts buildings used for manufacturing, along with laboratories, laundromats, hospitals, crematoria, and commercial kitchens. *Id.* § 28-506.1(9).

Local Law 154 directly addresses the twin crises of public health and climate change, while simultaneously encouraging the rapid development of New York City's green economy.

3

The Mayor's Office has recognized that "[this] law, the first of its kind for a large cold-weather city, represents a major shift in how buildings use energy to provide heating and cooling, by prioritizing air quality, public health, and greenhouse gas emissions reductions." *See* Press Release, Office of the Mayor, Mayor de Blasio Signs Landmark Bill to Ban Combustion of Fossil Fuels in New Buildings (Dec. 22, 2021), Jessel Decl. Ex. H. The law thus "help[s] accelerate a green transition." *Id.* As part of the shift initiated by Local Law 154, Section 4 of the law calls for "experts in the operation of heat pumps" to conduct a "study regarding the use of heat pump technology in relation to the anticipated use of such technology in connection with the implementation of this local law." Loc. L. No. 154 § 4.a.

## II.   PROPOSED INTERVENORS

### A.   WE ACT for Environmental Justice

WE ACT for Environmental Justice ("WE ACT") is a New York City membership organization whose mission is to build healthy environments for its members and the communities they represent. Jessel Decl. ¶ 3. Since its formation in Harlem in 1988 as the first people-of-color-led environmental justice organization in New York State, WE ACT has been building healthy communities by ensuring that people of color and low-income residents participate meaningfully in the creation of sound and fair environmental health and protection policies and practices. *Id.*

The city and state bodies charged with reducing harmful fossil fuel combustion have repeatedly recognized WE ACT's expertise and grassroots leadership of New York's clean energy transition. In September 2023, New York City announced the selection of a single community-based organization to represent each borough as a partner in meeting the city's building decarbonization goals; WE ACT is the organization representing Manhattan's communities. Jessel Decl. ¶ 14. In December 2022, the New York State Energy Research

Development Authority selected WE ACT to manage Manhattan's Clean Energy Hub, which is charged with fostering city residents' participation in the clean energy transition. Jessel Decl. ¶ 13. WE ACT also serves as one of three New York City organizations representing environmental justice communities for participation in New York State's Climate Justice Working Group, who are charged under the state's climate law with ensuring that frontline and otherwise underserved communities benefit from the state's historic transition to cleaner, greener sources of energy, reduced pollution and cleaner air, and economic opportunities. Jessel Decl. ¶ 2.

For the past thirty-five years, WE ACT has sought to address health disparities caused by environmental factors, including higher burdens from climate change and other impacts of pollution from fossil fuels, such as indoor air quality. Jessel Decl. ¶ 5. WE ACT's work includes organizing, research, public education, and advocacy and design of legal reforms. WE ACT's integrated advocacy has been instrumental in enacting reforms to improve New Yorkers' air quality. For example, WE ACT followed its production of a report on pediatric asthma disparities with a lead role in drafting the Asthma-Free Housing Act in New York City. Jessel Decl. ¶ 5 and Exs. A, B. In December 2017, the City Council passed the Act, addressing indoor asthma allergen hazards, as Intro 385C. Jessel Decl. ¶ 6.

WE ACT played a critical role in the development and passage of Local Law 154. In 2021, WE ACT launched a pilot program and published a report, *Out of Gas, In with Justice*, to demonstrate the feasibility and benefits of transitioning from fossil fuels to renewable energy in affordable housing. Jessel Decl. ¶ 7 and Ex. C. The study targeted households with at least one member living with asthma, and involved replacing gas stoves with induction stoves and monitoring the changes in indoor air quality in comparison with a control group. Jessel Decl. ¶ 7.

WE ACT subsequently developed and advocated for the passage of legislation, Intro 2317, which became Local Law 154. Jessel Decl. ¶ 8. Throughout 2021, WE ACT met with key legislators, organized rallies, and launched the #GasFreeNYC campaign alongside partners to develop and support passage of Local Law 154. Jessel Decl. ¶¶ 9–10. WE ACT also provided written and oral testimony in support of Local Law 154 during the November 17, 2021 City Council hearing. Jessel Decl. ¶ 11 and Exs. F, G.

WE ACT's central role in passing Local Law 154 is reflected in the materials accompanying the law's enactment. In the legislative hearing transcripts Plaintiffs appended to the complaint, WE ACT is specifically singled out by the council member who introduced the bill, Council Member Ampry-Samuel, as one of the named "advocates that gave us a master class and data for days on emissions, gas, the grid, pollutants." Compl. Ex. C at *13, ECF No. 1-3; *see also* Compl. Ex. B at *7–8, ECF No. 1-2 ("[T]he prime sponsor of 2317 is Council Member Ampry-Samuel."). And in the official press release issued by the Mayor's Office announcing the law's signing, WE ACT is the first nongovernmental organization quoted in support of the legislation. *See* Jessel Decl. ¶ 12 and Ex. H.

WE ACT has a direct interest in Local Law 154 because its membership comprises low-income tenants who depend on local regulation to control how much indoor pollution they are subjected to. Housing conditions in low-income communities contribute to socioeconomic disparities in household exposure to indoor air pollution. For example, smaller units, higher occupant density, and inadequate ventilation all contribute to higher levels of $NO_2$ in lower-income multifamily buildings. *See* Gary Adamkiewicz et al., *Moving Environmental Justice Indoors: Understanding Structural Influences on Residential Exposure Patterns in Low-Income Communities*, 101 Am. J. Pub. S238 (2011). A 2022 study by the National Center for Healthy

6

Housing revealed that 90% of rental homes did not have adequate ventilation, and another study showed that gas stove pollution was highest in multi-unit buildings. *See* Am. Pub. Health Ass'n, Policy No. 20225, *Gas Stove Emissions Are a Public Health Concern* (Nov. 8, 2022), https://www.apha.org/Policies-and-Advocacy/Public-Health-Policy-Statements/Policy-Database/2023/01/18/Gas-Stove-Emissions (citing Nat'l Ctr. for Healthy Hous., *Studying the Optimal Ventilation for Environmental Indoor Air Quality* (Apr. 2022), https://nchh.org/resource-library/report_studying-the-optimal-ventilation-for-environmental-indoor-air-quality.pdf and Lisa K. Baxter et al., *Predictors of Concentrations of Nitrogen Dioxide, Fine Particulate Matter, and Particle Constituents Inside of Lower Socioeconomic Status Urban Homes*, 17 J. Exposure Sci. & Env't Epidemiology 433 (2007)). Low-income communities and renters are therefore particularly vulnerable to indoor air pollution in the absence of restrictions on indoor combustion of fossil fuels. *See* Physicians for Soc. Resp., WE ACT & Sierra Club, *The Outdoor Pollution Is Coming from Inside the House: National Building Pollution Report* 11–12 (2023), Jessel Decl. ¶ 15 and Ex. J.

The communities WE ACT represents are also at greater risk of developing cardiovascular and respiratory illnesses from indoor air pollution because these low-income communities and communities of color already experience greater outdoor pollution burdens. These cumulative burdens produce significant health disparities. *See id.* If Local Law 154 is struck down, the tenants WE ACT represents will once again be at the mercy of landlords' choices of appliances when it comes to how much indoor air pollution tenants are forced to endure.

### B.    NY-GEO

Founded in 2014, New York Geothermal Organization is a not-for-profit trade association which represents the geothermal heat pump industry in New York State. Nowak

Decl. ¶ 3. The seventy founding members, including geothermal system designers, installers, drillers, general contractors, engineers, manufacturers, distributors, renewable energy consultants and industry stakeholders, install and advocate for the use of ground-source heat pumps to heat and cool buildings throughout New York State. *Id.* NY-GEO provides job training opportunities, hosts an annual ground source heat pump conference, and engages in advocacy for policies that promote the transition to clean heating and cooling technologies. Nowak Decl. ¶ 6. NY-GEO testified in support of Local Law 154. Nowak Decl. ¶ 7.

Electric heat pumps are a central part of the elimination of fossil fuel combustion required by Local Law 154. As the Mayor's Office of Sustainability reported, EPA studies have determined that ground source heat pumps are the most "environmentally clean, and cost-effective space-conditioning systems available, with the lowest carbon dioxide emissions." N.Y.C. Mayor's Off. of Sustainability, Geothermal Systems and their Application in New York City 13 (Feb. 2015), http://www.nyc.gov/html/planyc/downloads/pdf/publications/2015_Geothermal.pdf. The importance of electric heat pumps to the implementation of Local Law 154 is reflected in Section 4 of the law, which calls for "experts in the operation of heat pumps" to conduct a "study regarding the use of heat pump technology in relation to the anticipated use of such technology in connection with the implementation of this local law." Loc. L. No. 154 § 4.a.

NY-GEO's members and others involved in the heat pump industry represent a quickly growing sector of the City and State economy, and their growth stands to substantially accelerate as a result of Local Law 154. Nowak Decl. ¶ 8. The heat pump industry is responsible for jobs that will remain in-state and cannot be outsourced. Nowak Decl. ¶ 5. NY-GEO has estimated there are approximately 2,000 New Yorkers currently employed in ground source heat pump

marketing, sales, system design and installation. *Id*. Because Local Law 154 "represents a major shift in how buildings use energy to provide heating and cooling," and "help[s] accelerate a green transition," these numbers stand to increase significantly, bringing economic benefits to NY-GEO's members along with health and safety improvements for New Yorkers. Jessel Decl. Ex. H.

## III.   THE LAWSUIT

Plaintiffs are various trade associations and a union whose members anticipate deriving economic benefits from the protracted use of fossil fuel appliances and infrastructure, and oppose the City's efforts to limit fossil fuel combustion in new buildings. Compl. ¶ 4. They maintain that Local Law 154 is preempted by EPCA because the ordinance bars the combustion of fossil fuels in many new buildings, and thereby prevents the use of certain appliances covered by EPCA in certain buildings. *Id.* ¶¶ 65–68. According to Plaintiffs' theory, EPCA effectively guarantees that any covered appliance may be used in any city building, and prohibits the City from addressing the grave health and safety concerns caused by burning fossil fuels indoors.

On the basis of this claim, Plaintiffs have asked this Court to declare Local Law 154 unlawful and to enjoin its enforcement, among other relief. Compl. ¶ 85.

## ARGUMENT

WE ACT and NY-GEO seek permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B), which authorizes this Court to grant the timely motion of parties with "a defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

> To be granted intervention as of right or by permission, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."

*Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)).

"[B]ecause "the principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties," "district courts in the Second Circuit have recognized that the preceding four factors should be considered as a whole, rather than focusing narrowly on any one of the criteria." *In re Application of Bm Brazil 1 Fundo de Investimento em Participacoes Multistratégia*, No. 23-MISC-208, 2024 WL 555780, at *4 (S.D.N.Y. Jan. 18, 2024), *R. & R. adopted sub nom.* 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024) (quoting *Olin Corp v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018) and *Bldg. & Realty Inst. of Westchester and Putnam Cnties., Inc. v. New York*, No. 19-CV-11285, 2020 WL 5658703, at *5 (S.D.N.Y. Sep. 23, 2020)).

"Permissive intervention is wholly discretionary with the trial court." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). "Even where a party does not meet" each of the requirements for intervention as of right, "a court may, in its discretion, grant permissive intervention," *New York v. U.S. Immigration & Customs Enforcement*, No. 19-cv-8876, 2019 WL 7816835, at *1 (S.D.N.Y. Dec. 17, 2019), so long as the proposed intervenor timely seeks to participate and "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B). *See also, e.g.*, 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1902 (3d ed. 2023) ("A would-be intervenor who does not meet the test of subdivision (a) may be permitted to intervene under subdivision (b)(1)(B)) if the applicant has a claim or defense that shares a common question of law or fact with the main

action."); *infra* Section IV (collecting cases where intervention as of right unavailable due to adequate representation, but granting permissive intervention).

"Courts in this District have held that Rule 24(b)(2) is 'to be liberally construed' in favor of intervention." *Human Servs. Council of New York v. City of New York*, No. 21-CIV-11149 , 2022 WL 4585815, at *3 (S.D.N.Y. Sept. 29, 2022) (cleaned up). Factors counseling in favor of intervention include "'the nature and extent of the intervenors' interests,' the degree to which those interests are 'adequately represented by other parties,' and 'whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (quoting *Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977)).

This Court should grant WE ACT and NY-GEO's request for permissive intervention because this motion is timely, the organizations have strong interests in Local Law 154, and their participation will significantly contribute to the just and equitable resolution of this matter. In another recent action challenging whether a restriction on gas appliances was preempted by EPCA, the court determined that organizations with similar interests in defending the law satisfied the requirements for intervention. *See* Order Granting Motions, *Rivera v. Wash. State Bldg. Code Council*, No. 23-cv-03070 (E.D. Wash. June 12, 2023), ECF No. 34.

Because of WE ACT's and NY-GEO's specialized knowledge and years of experience in addressing the legal and factual issues surrounding building electrification, they are well situated to describe the effects of Local Law 154 and, if necessary, to augment the factual record. WE ACT played a central role in securing the indoor air quality reform mandated by Local Law 154, and its expertise and leadership have been widely recognized by City and State government. *See*

*supra* pp. 4–7; *see also* Jessel Decl. ¶¶ 1, 7–14. NY-GEO's expertise is likewise key to implementation of Local Law 154, and its membership possess deep knowledge of the technological opportunities, benefits, and challenges accompanying the transition to a green building sector. Nowak Decl. ¶¶ 3, 6, 8. As demonstrated in the attached Proposed Memorandum of Law in Support of Dismissal, they can contribute to a more complete presentation of the extraordinary scope of Plaintiffs' theory of preemption, *see* Proposed Mem. of Law Section III, as well as to the interests threatened by this lawsuit, *see id.* Sections II.A–II.B.

**I.     This Motion Is Timely, and Permission to Intervene Will Neither Delay the Action nor Prejudice the Adjudication of Any Party's Rights.**

"The timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion." *Floyd*, 770 F.3d at 1058 (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986). "It is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (quoting *United States v. Int'l Bus. Machines Corp.*, 62 F.R.D. 530, 541–42 (S.D.N.Y.1974)). "Absent any significant prejudice to the existing parties, courts usually consider an application for intervention as timely." *Hulinsky v. Cnty. of Westchester*, No. 22-CV-06950, 2023 WL 3162428, at *3 (S.D.N.Y. Apr. 28, 2023) (quoting *Home Ins. Co. v. Liberty Mut. Ins. Co.*, No. 87-CV-00675, 1990 WL 188925, at *2 (S.D.N.Y. Nov. 20, 1990)).

Here, there has been no delay and permitting intervention will prejudice no party. WE ACT and NY-GEO filed this motion less than two months after the complaint was served on the City, *see* ECF No. 7 (City served on January 4, 2024). No initial status conference has taken place, no initial disclosures have been served, no case management plan has been developed, and there has been no discovery. WE ACT and NY-GEO file this motion and their Proposed

Memorandum of Law in Support of Dismissal concurrently with the deadline the Court set for the City's Motion to Dismiss. *See* ECF No. 18 (order setting schedule). WE ACT and NY-GEO likewise commit to participating in dismissal briefing on the same schedule as the City should this Court grant permission to intervene. Permissive intervention thus will not delay or otherwise prejudice the adjudication of that motion. *See, e.g.*, *335-7 LLC v. City of New York*, No. 20-CIV-1053, 2020 WL 3100085, at *4 (S.D.N.Y. June 11, 2020) (permitting intervention where "Proposed Intervenors will be subject to the same briefing schedule regarding the defendants' pending motions to dismiss" and observing that the "Plaintiffs cannot claim an appreciable burden from having to respond to Proposed Intervenors' legal arguments, whose submissions as *amicus curiae* the Court otherwise undoubtedly would have received"). "In other words, this litigation is in its early stages such that the motion to intervene is timely because the intervention would not significantly affect the case's manageability." *CIFI Latam, S.A. v. Tauch*, No. 19-CV-05607, 2020 WL 1164687, at *2 (S.D.N.Y. Mar. 11, 2020) (citation omitted).

Because "this action is in its infancy," WE ACT and NY-GEO's participation "will not result in delay or prejudice" to any party. *Friends of E. Hampton Airport, Inc. v. Fed. Aviation Admin.*, No. 15-CV-0441, 2016 WL 792411, at *9 (E.D.N.Y. Feb. 29, 2016). Courts in this Circuit routinely deem motions to intervene under like circumstances timely. *See, e.g.*, *Human Servs. Council of New York*, 2022 WL 4585815, at *3; *Olin Corp.*, 325 F.R.D. at 88 ("[C]ourts have found motions to intervene timely where, as here, these motions were brought a 'few months' after the claims.") (citations omitted). Even in cases where substantially more time has elapsed before intervention, courts in this District have deemed intervention motions timely. *See, e.g.*, *Hulinsky*, 2023 WL 3162428, at *2 (motion timely when filed "approximately five months after Plaintiffs commenced this action"); *Bldg. & Realty Inst.*, 2020 WL 5658703, at

*7(collecting cases where courts have granted as timely motions to intervene where the movants waited three months or longer); *Rodriguez v. It's Just Lunch, Int'l*, No. 07-CV-09227, 2013 WL 1749590, at *3 (S.D.N.Y. Apr. 23, 2013) (motion to intervene filed five months after receiving notice of interest not untimely); *S.E.C. v. Credit Bancorp, Ltd.*, No. 99-CV-11395, 2000 WL 1170136, at *2 (S.D.N.Y. Aug. 16, 2000) (same).

## II. WE ACT and NY-GEO Have a Strong Interest in Defending the Validity of an Ordinance that They Supported and that Directly Benefits Their Members, and Their Defense Turns on a Common Question of Law and Fact Shared with the Main Action.

Permissive intervention under Rule 24(b)(1)(B) requires the proposed intervenor to identify "a claim or defense that shares with the main action a common question of law or fact." "It is well-established by district courts in the Second Circuit that the words 'claim or defense' are not read in a technical sense, but only require some interest on the part of the applicant" and "common issues of law or fact." *Bldg. & Realty Inst.*, 2020 WL 5658703, at *9 (cleaned up) (collecting cases). Here, WE ACT and NY-GEO have an interest in Local Law 154 and share with the City a defense of that ordinance that turns on a common question of law and fact.

As described, WE ACT played a central role in securing the indoor air quality reform mandated by Local Law 154, and its membership, comprised largely of tenants, will benefit from the improvements to air quality the law requires. *See supra* pp. 4–7; *see also* Jessel Decl. ¶¶ 1, 7–12. NY-GEO likewise supported passage of Local Law 154, and its membership has demonstrated the economic benefits accompanying the transition to a green building sector. Nowak Decl. ¶¶ 5–8. The heat pump industry is so central to implementation of Local Law 154 that heat pumps are singled out specifically for study in the law itself. *See* Loc. L. No. 154 § 4. "Organizations may have sufficient interest to support intervention ... in actions involving legislation or regulations previously supported by the organization." *Commack Self-Serv. Kosher*

14

*Meats, Inc. v. Rubin*, 170 F.R.D. 93, 102 (E.D.N.Y. 1996) (citation omitted); *see also Bldg. & Realty Inst.*, 2020 WL 5658703, at *11 (finding that proposed intervenors had "demonstrated sufficiently direct and substantial interests" where they "played an active role in the formation and passage of the [challenged law]" and "represented that their members ... could be affected by revocation of the [challenged law]"); *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007) (groups that advocated for campaign finance laws had interest in its validity, partially on account of that advocacy and because "the very purposes for which the organizations were originally created, namely, election reform, are at stake"); *Herdman v. Town of Angelica*, 163 F.R.D. 180, 187 (W.D.N.Y. 1995) (organization had interest in case challenging constitutionality of town ordinance for which it had lobbied).

 While Plaintiffs oppose the transition of New York City's new buildings to clean, carbon-free heating and cooling, WE ACT's members are the tenants whose health depends on buildings being free of fossil fuel pollution and NY-GEO's members are the heat pump manufacturers, designers, installers, and other workers who are called upon to implement the technological transition Local Law 154 requires. Both WE ACT and NY-GEO's memberships thus stand to benefit directly from the significant investment in clean technology that the law will spur. As the Second Circuit made clear in *New York Public Interest Research Group v. Regents of University of New York*, "sufficient interest to permit [a party] to intervene" exists where "the validity of a regulation from which its members benefit is challenged." 516 F.2d 350, 352 (2d Cir. 1975). *See also, e.g.*, *Human Servs. Council of N.Y.*, 2022 WL 4585815, at *4 (union had interest in ordinance requiring labor peace agreements from human services employers who contract with the City); *New York v. Scalia*, No. 20-cv-1689, 2020 WL 3498755, at *2 (S.D.N.Y. June 29, 2020) (employer groups had interest in case challenging regulation governing Fair Labor

Standards Act claims); *New York v. U.S. Dep't of Health & Human Servs.*, No. 19-Civ-4676, 2019 WL 3531960, at *4 (S.D.N.Y. Aug. 2, 2019) [hereinafter *HHS*] (religious healthcare workers had interest in lawsuit challenging federal regulation permitting healthcare providers to refrain from procedures that violate religious beliefs); *Conn. Fine Wine & Spirits, LLC v. Harris*, No. 16-cv-1434, 2016 WL 9967919, at *5 (D. Conn. Nov. 8, 2016) (trade associations of alcohol purveyors and wholesalers had interest in lawsuit challenging as preempted state liquor sales statutes); *Commack Self-Serv. Kosher Meats*, 170 F.R.D. at 101–03(purveyors and consumers of kosher products, as well as a rabbi who fields questions concerning kosher products, had interest in case challenging constitutionality of the New York Kosher Laws).

WE ACT and NY-GEO's defense of Local Law 154 likewise shares a common question with the City's defense. A "single common question of law or fact" is enough to support permissive intervention. *Miller v. Silbermann*, 832 F. Supp. 663, 673 (S.D.N.Y. 1993) (quoting *McNeil v. N.Y.C. Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989)). Here, the fundamental legal question is identical: whether Local Law 154 is preempted by federal law. This constitutes the "common question" required for permissive intervention. *See Human Servs. Council of N.Y.*, 2022 WL 4585815, at *4 (union "satisfied this requirement, as it shares the City's presumed defense – namely, whether Local Law 87 is constitutionally sound and whether it is preempted by federal labor law" (cleaned up)).

## III. WE ACT and NY-GEO'S Intervention Will Promote Development of the Factual Record and Fair Adjudication of the Underlying Legal Issues.

As noted, one factor pertinent to permissive intervention is "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Brennan*, 579 F.2d at 191–92 (quoting *Spangler*, 552 F.2d at 1329). Applying that consideration, courts in this

Circuit have concluded that an intervenor's deep experience dealing with the subject matter of challenged legislation will often assist the parties in developing the factual record and enhance the quality of briefing before the Court. *See, e.g.*, *Bldg. & Realty Inst.*, 2020 WL 5658703, at *11 (tenants'-rights group granted permission to intervene permissively on the side of the City because they "can bring to bear on the briefing their detailed knowledge" of the legislation, its effects, and the potential effects of striking it).

The legislative and executive materials accompanying the enactment of Local Law 154 reflect WE ACT's deep grassroots expertise with respect to both the need for Local Law 154 and the effects of its implementation on the tenants that WE ACT serves. *See* Compl. Ex. C at 13, ECF No. 1-3; Jessel Decl. ¶ 12 and Ex. H. The record accompanying this motion similarly demonstrates WE ACT's longstanding commitment, leadership, and experience in improving the air quality and health outcomes of the City's low-income tenants and tenants of color. Jessel Decl. ¶¶ 3–15 and Exs. A–C, F–J. As a court in this District determined in granting permission for tenants' rights organizations to intervene alongside the City, "Proposed Intervenors, grassroots organizations that closely serve tenants directly impacted by the [challenged law] and having been intimately involved in efforts in connection with the [challenged law] for decades, will undoubtedly contribute 'to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *335-7 LLC*, 2020 WL 3100085, at *3 (citation omitted); s*ee also Miller*, 832 F. Supp. at 674 (finding that "considerations of fairness strongly weigh in favor of permissive intervention" for tenants seeking to defend housing court policies, and that "Tenants, in light of their knowledge and concern, will greatly contribute to the Court's understanding of this case").

WE ACT and NY-GEO are well-situated to develop the record relating to Plaintiffs'
claims about the effects of Local Law 154. For example, while Plaintiffs claim that a restriction
on fossil-fuel combustion "exacerbates the problem of housing affordability," Compl. ¶ 3, WE
ACT's specific expertise on reducing gas use in affordable housing belies this claim. Moreover,
as the Proposed Memorandum of Law in Support of Dismissal describes, WE ACT's research
shows the critical importance of the air quality improvements brought about by Local Law 154.
*See* Proposed Mem. of Law Section II.A. Similarly, NY-GEO's deep knowledge of heat pump
technology and the heat pump industry can shed light on Plaintiffs' claim that a restriction on
fossil-fuel-burning "water heaters, furnaces, and other appliances or equipment is fundamentally
inconsistent with the public interest . . . and will shift energy demand onto already overburdened
electric grids." Compl. ¶ 3.

And because Plaintiffs assert that Local Law 154 is "already . . . causing irreparable
harm," Compl. ¶ 8, and seek injunctive relief from the Court, *id.* ¶ 85(b), WE ACT and NY-GEO
are particularly well-situated to aid the Court by ensuring a more comprehensive presentation of
the balance of equities. *See United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 415, 418–19
(S.D.N.Y. 2018) (intervenors would "provide this Court with a fuller picture to evaluate the
fairness, reasonableness, and equities"). WE ACT has significant expertise on the public health
impacts of indoor air pollution on New Yorkers in general, and on low-income New Yorkers and
New Yorkers of color in particular. In addition, as against Plaintiffs' claims about the economic
effects of Local Law 154, NY-GEO can address the economic and job-creation benefits of
building electrification mandates. As another court in this District observed in granting
permissive intervention, "the Court would benefit from concrete factual submissions from the
Proposed Intervenors as to the hardships occasioned by the absence of the Rule . . . much as the

Court would benefit from factual submissions by plaintiffs as to the hardships occasioned by the Rule." *HHS*, 2019 WL 3531960, at *6.

Finally, as demonstrated in the Proposed Memorandum of Law in Support of Dismissal, WE ACT and NY-GEO can shed light on the distinction between Local Law 154's reach and the scope of EPCA, and on the implications for New Yorkers that Plaintiffs' radically broad reading of EPCA's preemption clause would bring about. *See* Proposed Mem. of Law Sections II–III. WE ACT and NY-GEO thus "offer a unique, personal and highly relevant factual perspective to the law, its development, and its impact," as well as "specialized expertise and substantial familiarity with the legal issues that are presented for review. The court will only benefit from their participation." *Ass'n of Conn. Lobbyists*, 241 F.R.D. at 103.

## IV.  Permissive Intervention Does Not Require that the City's Representation Be Inadequate.

WE ACT and NY-GEO seek to intervene for the purpose of defending the validity of Local Law 154. Proposed Intervenors understand that the City shares that objective and have no reason to doubt that the City will mount an able defense of the law. But "'Rule 24(b) does not list inadequacy of representation as one of the considerations for the court' in exercising its discretion under Rule 24(b), and although a court may consider it, 'it is clearly a minor factor at most.'" *Human Servs. Council of N.Y.*, 2022 WL 4585815, at *4 (quoting *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 88 (D. Conn. 2014)). *See also HHS*, 2019 WL 3531960, at *6 ("[T]o grant permissive intervention, Rule 24(b) does not require a finding that party representation be inadequate."). Thus, as another court in this District recently observed in granting permissive intervention to join the defense of a City law from a preemption challenge, "courts in this District routinely grant permissive intervention despite finding that an existing party adequately represents the proposed intervenor's interest." *Id.* at *4 (citing *Bldg. & Realty Inst.*, 2020 WL

5658703, at *13; *New York v. Scalia*, 2020 WL 3498755, at *2; *HHS*, 2019 WL 3531960, at *6–7; *United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. at 417–18).[2]

## CONCLUSION

For the reasons described above, we ask that the Court grant WE ACT and NY-GEO's motion for permissive intervention.

DATED: March 1, 2024

> *s/Dror Ladin*
> Dror Ladin
> Meagan Burton
> Earthjustice
> 48 Wall Street, 15th Floor
> New York, NY 10005
> (917) 410-8701
> dladin@earthjustice.org
> mburton@earthjustice.org
>
> *Attorneys for Proposed Intervenor-Defendants*

---

[2] A grant of permission to intervene may be particularly appropriate here in light of the distinctive interests that Proposed Intervenors represent as against the City's. WE ACT's membership is largely composed of tenants, and, as a court in this district observed in granting permissive intervention, the government "do[es] not always act in lockstep with tenants." *Bldg. & Realty Inst.*, 2020 WL 5658703, at *13. And NY-GEO's economic interests are distinct from those the City advances here. *See N.Y. Pub. Interest Rsch. Grp.*, 516 F.2d at 352 (finding standards for intervention as of right met where the intervenor "will make a more vigorous presentation of the economic side of the argument" than would the government, where the challenged regulation affected the intervenor's economic interests).