**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------

ASSOCIATION OF CONTRACTING
PLUMBERS OF THE CITY OF NEW YORK,
INC., et al.,

                                  Plaintiffs,

             v.

CITY OF NEW YORK,

                                  Defendant.

---------------------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:23-cv-11292-RA

**PLAINTIFFS' MEMORANDUM
OF LAW IN OPPOSITION TO
MOTION TO INTERVENE
(DKT. 23)**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.    The Court Should Deny Intervention Because the City Adequately Represents
Proposed Intervenors' Generalized Interest in Preserving the Challenged Law,
While Intervention Would Magnify Expense and Burden Without Aiding the Court. ....4

    A.    Intervention Here Will Not Assist the Court. ........................................... 4

    B.    The City Can and Will Adequately Defend Its Own Law, Which Militates
Against Permissive Intervention................................................................. 7

    C.    Proposed Intervenors Lack a "Protectable Legal Interest" in the Lawsuit. .......... 10

    D.    The Potential for Undue Delay and Prejudice to Plaintiffs Weighs Sharply
Against Permissive Intervention.......................................................... 13

II.    If Intervention Is Allowed, the Court Should Limit The Scope and Require Joint
Briefing. ..............................................................................................................14

    A.    To Avoid Doubling the Burden on Plaintiffs and the Court, All Defendants
Should Have to File a Joint Brief, as Plaintiffs Do Now..................................... 15

    B.    To Avoid the Risk of Delay and Prejudice to Plaintiffs, Proposed Intervenors
Should Be Limited to Dispositive Motions Briefing............................................ 15

CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*,
  2020 WL 5667181 (S.D.N.Y. Sept. 23, 2020)............................................................... *passim*

*Cal. Rest. Ass'n v. City of Berkeley*,
  89 F.4th 1094 (9th Cir. 2024) .......................................................................................1, 5, 6

*Comcast of Conn./ Ga./ Mass./ N.H./ N.Y./ N.C./ Va./ Vt., LLC v. Vt. Pub. Util. Comm'n*,
  2018 WL 11469513, (D. Vt. Feb. 8, 2018)...........................................................................12

*Commack Self–Serv. Kosher Meats, Inc. v. Rubin*,
  170 F.R.D. 93 (E.D.N.Y. 1996) ..............................................................................................8

*Diamond v. Charles*,
  476 U.S. 54 (1986)..............................................................................................................10, 12

*Floyd v. City of New York*,
  770 F.3d 1051 (2d Cir. 2014).............................................................................................. *passim*

*Great Atl. & Pac. Tea Co. v. Town of East Hampton*,
  178 F.R.D. 39 (E.D.N.Y. 1998) .......................................................................................8, 13

*Grocery Mfrs. Ass'n v. Sorrell*,
  2014 WL, 2014 WL 12644264 (D. Vt. Oct. 7, 2014)........................................................6, 8

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013)............................................................................................................11, 12

*Hughes v. Abell*,
  2014 WL 12787807 (D.D.C. Feb. 10, 2014) .........................................................................12

*Hum. Servs. Council of N.Y. v. City of New York*,
  2022 WL 4585815 (S.D.N.Y. Sept. 29, 2022).......................................................................10

*Kearns v. Cuomo*,
  2019 WL 5060623 (W.D.N.Y. Oct. 9, 2019) .................................................................8, 9, 14

*N.Y. Progress & Prot. PAC v. Walsh*,
  733 F.3d 483 (2d Cir. 2013)....................................................................................................5

*New York v. Scalia*,
  2020 U.S. Dist. LEXIS 115415 (S.D.N.Y. June 29, 2020).....................................................7

*New York v. U.S. Dep't of Health & Hum. Servs.*,
    2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019) ...................................................................6, 7, 10

*Rivera v. Washington State Building Code Council*,
    No. 23-cv-03070 (E.D. Wash.) ......................................................................................14

*SEC v. Bear, Stearns & Co. Inc.*,
    2003 WL 22000340 (S.D.N.Y. Aug. 25, 2003) .................................................................9

*Srour v. New York City*,
    2023 WL 7005172 (S.D.N.Y. Oct. 24, 2023) ...................................................................5

*U.S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978) ...........................................................................................4

*United States v. Apple, Inc.*,
    2012 WL 4513541 (S.D.N.Y. Oct. 2, 2012) ...........................................................6, 9, 11

*United States v. N.Y.C. Hous. Auth.*,
    326 F.R.D. 411 (S.D.N.Y. 2018) .............................................................................. *passim*

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) ...................................................................................4, 13, 14

**Statutes**

42 U.S.C. §§ 6201-6422 ...............................................................................................1

**Rules**

Fed. R. Civ. P. 8 ..........................................................................................................11

Fed. R. Civ. P. 10 ........................................................................................................11

Fed. R. Civ. P. 12(b) ...................................................................................................11

Fed. R. Civ. P. 14(a)(2) ...............................................................................................11

Fed. R. Civ. P. 23(a)(3) ...............................................................................................11

Fed. R. Civ. P. 23(c)(1)(B) ..........................................................................................11

Fed. R. Civ. P. 24 ........................................................................................................10

Fed. R. Civ. P. 24(b) ...........................................................................................3, 4, 12, 14

Fed. R. Civ. P. 24(b)(1) ........................................................................................3, 10, 12, 14

Fed. R. Civ. P. 24(b)(3) ................................................................................................4

Fed. R. Civ. P. 24(c) ........................................................................................10

Fed. R. Civ. P. 50(a)(1) ....................................................................................11

Fed. R. Civ. P. 56(a) ........................................................................................11

**Regulations**

N.Y.C. Admin. Code §§ 24-177.1, 28-506.1 ....................................................1

**Other Authorities**

Moore's Federal Practice-Civil § 24.11 ...........................................................11

7C Wright & Miller, Federal Practice and Procedure § 1913..................14, 15

## INTRODUCTION

This case presents a facial preemption challenge to the City of New York's ordinance banning combustion appliances in new construction by prohibiting combustion of substances with carbon dioxide emissions levels over a certain threshold, as determined by the Energy Information Administration's emissions factors (the "gas ban").  N.Y.C. Local Law No. 154 (2021) (codified at N.Y.C. Admin. Code §§ 24-177.1, 28-506.1).  By design, the City set the maximum level so low as to ban all gas and oil appliances in new buildings.  The City admits as much.  *See* Dkt. 20 at 2-3.  The City's ban is preempted by the federal Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§ 6201-6422, which expressly preempts state and local regulations concerning the energy use or energy efficiency of federally regulated appliances.  And the City's ban does not qualify for any exemption from preemption.  Plaintiffs accordingly brought this Complaint seeking declaratory and injunctive relief against the City's enforcement of the ban.  Dkt. 1.

Plaintiffs' legal challenge does not depend on the circumstances surrounding the passage of the City's ban, nor on its as-applied effects on individuals or businesses or particular buildings.  Rather, it requires considering whether EPCA's express preemption provision, understood through EPCA's text, structure, and purpose, covers the City's ban.  The only federal appellate court to have addressed this issue held, on a facial preemption challenge, that EPCA preempted Berkeley, California's ban on gas infrastructure in new buildings.  *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1098-99 (9th Cir. 2024).

WE ACT for Environmental Justice and New York Geothermal Energy Organization ("Proposed Intervenors") seek permissive intervention as defendants in this case.  Dkt. 23.  But they admit that their interest in this case is identical to the City's—defending the gas ban—and that the City is adequately representing that shared interest.  Dkt. 24 at 19.  And they neither assert any claim against Plaintiffs nor have any defense that could be adjudicated in its own right by an

Article III court; their "defense" is merely a preference that the City wins and Plaintiffs lose. Proposed Intervenors nevertheless contend that the Court should ignore all that and use its discretion to make them parties to this suit.

To be sure, the City's adequate representation does not categorically preclude permissive intervention; particular circumstances may still justify it.  But there are no such circumstances here.  Proposed Intervenors have nothing to offer this case as parties.  They suggest they could assist the Court by developing a factual record, but that offer is meaningless here, where there are no facts in dispute; Plaintiffs' facial preemption claim presents a strictly legal issue.  All Proposed Intervenors have to add are policy arguments and relief from the Court's page limits.  In the end, Proposed Intervenors' interest in this suit is not meaningfully different from that of anyone else who likes the City's law.  Plaintiffs do not doubt that Proposed Intervenors care deeply about the outcome of this case, but a general desire to "defend the law" does not justify stepping into the shoes of a party.

The practical impact of the proposed intervention will be to unnecessarily expand the proceedings in what should be a straightforward case.  Allowing Proposed Intervenors to act as parties would create the very real risk of derailing this litigation (and running up its costs) with unnecessary discovery and motions practice—as their apparent desire to develop irrelevant factual issues signals.  This risk of delay and prejudice to Plaintiffs, along with the corresponding burden on this Court, weighs against intervention.  This motion itself is already adding cost and burden for Plaintiffs.  And if their proposed 25-page motion to dismiss is any sign, inviting Proposed Intervenors into this case as parties is inviting double the briefing on every issue.  There is no good reason to allow that doubling of the burden on Plaintiffs and the Court.

In short, the City can defend its own law and is doing so vigorously.  Preferring that one

side or the other win a case does not warrant being allowed to become a party.  That position has no limiting principle and is at odds with the limited jurisdiction of the federal courts.  Those who wish to assist the Court in deciding a case by adding their policy and legal views already have a less intrusive mechanism for doing so: filing an amicus brief.  Indeed, Plaintiffs already consented to the Natural Resources Defense Council's participation as an amicus—and that is the best and most appropriate vehicle for Proposed Intervenors to make their views known, too.

Proposed Intervenors' motion should therefore be denied.  If, however, the Court were to allow intervention, Plaintiffs request that all defendants be required to file joint briefing, as Plaintiffs do now, and that the scope of intervention be limited to dispositive motions, to minimize the risk of undue cost, burden, and delay.

## ARGUMENT

The Second Circuit has explained that "[i]ntervention is a procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand."  *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014).

Permissive intervention is governed by Civil Rule 24(b), which provides in pertinent part: "On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  As the Second Circuit has explained, an applicant for intervention—whether "as of right or by permission"—must (i) "timely file an application," (ii) "show an interest in the action," (iii) "demonstrate that the interest may be impaired by the disposition of the action," and (iv) "show that the interest is not protected adequately by the parties to the action."  *Floyd,* 770 F.3d at 1057 (attribution omitted).  "A failure to satisfy *any one* of these four requirements is a

3

sufficient ground to deny the application." *Id.* (cleaned up).

Moreover, courts must address practical considerations, including the added cost, burden, or delay for the existing parties.  Fed. R. Civ. P. 24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").  Accordingly, beyond the general need to "satisfy the four . . . factors" just discussed, "the principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, 2020 WL 5667181, at *3 (S.D.N.Y. Sept. 23, 2020) (cleaned up) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)).  The Court has discretion to deny intervention even if all four factors have been met.  *See U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978) ("The trial court's discretion is very broad; indeed, we have not found a single case in which a denial of permissive intervention under Rule 24(b) was reversed."); *Pitney Bowes*, 25 F.3d at 73 ("Reversal of a district court's denial of permissive intervention is a very rare bird indeed, so seldom seen as to be considered unique.").

Participation as an amicus is an alternative that allows would-be intervenors to express their policy and legal views and gives the Court the benefit of that legal analysis or context, "while avoiding the duplicative and unnecessary litigation that would arise" from intervention.  *Bldg. & Realty Inst.*, 2020 WL 5667181, at *8.

## I.     The Court Should Deny Intervention Because the City Adequately Represents Proposed Intervenors' Generalized Interest in Preserving the Challenged Law, While Intervention Would Magnify Expense and Burden Without Aiding the Court.

### A.     Intervention Here Will Not Assist the Court.

This case involves a facial challenge to a local regulation that turns on a purely legal question:  Does EPCA preempt the City's gas ban?  *Supra* at 1.  Proposed Intervenors say they can

help resolve this case by adding facts about how the gas ban came to be and its asserted policy benefits for various constituencies. *See* Dkt. 24 at 1-2, 11-12, 16-19; *id.* at 11 (Proposed Intervenors claiming that "they are well situated to describe the effects of Local Law 154 and, if necessary, to augment the factual record"). But this facial preemption challenge does not depend on any fact involving justifications for or implementation of the ban. *See, e.g.*, *Cal. Rest. Ass'n*, 89 F.4th at 1098-99 (holding at the motion to dismiss stage that EPCA preempted a similar ban). Nor does intimate familiarity with the legislative record have any bearing here. The City concedes that its ordinance is a ban on gas appliances. Dkt. 20 at 3. So do Proposed Intervenors. Dkt. 23-1 at 20 (contrasting "electric appliances used in new buildings" as required by the ordinance with "gas-burning alternatives available in older construction"). No facts relating to how or why that ban was passed matter to the legal issue. In short, Proposed Intervenors' offer to develop a factual record is simply irrelevant to the facial challenge at issue here and so will not aid the Court in resolving this case.

Proposed Intervenors also suggest that they can help develop facts surrounding the anticipated impact of any injunctive relief barring enforcement of the ban. Dkt. 24 at 18. This is just as unhelpful. There is no pending request for preliminary injunctive relief. And the request for a permanent injunction if the ordinance is found preempted by EPCA does not depend on any consideration of the purported harms from enjoining an unlawful ban. There can be no legitimate interest in allowing continued enforcement of a preempted law. *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (favorably citing the proposition that "[t]he Government does not have an interest in the enforcement of an unconstitutional law" (attribution omitted)); *Srour v. New York City*, 2023 WL 7005172, at *21 (S.D.N.Y. Oct. 24, 2023) (granting a permanent injunction where the plaintiff "succeed[ed] on the merits of his facial challenge" to the City's law,

and noting that there is no legitimate interest in the "enforcement of an unconstitutional law"). Proposed Intervenors cite no authority for the notion that after determining on the merits that Congress preempted the City's ban, this Court could nonetheless decide that the preempted ban's policy effects justified keeping it in effect. *See* Dkt. 24 at 18-19.[1]  Finally, any relief here would be against the City, not Proposed Intervenors, who have no role in enforcing the ban.

In short, Proposed Intervenors' policy views and factual assertions have no bearing on any issue in this case and therefore their participation as parties will not assist the Court.

To the extent the Court would still find it helpful to hear Proposed Intervenors' legal and policy views on this case, the better course is to allow them to participate as amici.  Plaintiffs have no objection to that approach (subject of course to reasonable limits on the timing and length of filings), just as Plaintiffs consented to the NRDC's amicus brief, *see* Dkt. 30.  Amicus participation would enable Proposed Intervenors to share their views without the undue delay, cost, and associated prejudice to Plaintiffs or the unnecessary burden on the Court that comes with allowing them to participate as parties.  That is exactly what amicus briefs are for.  *Bldg. & Realty Inst.,* 2020 WL 5667181, at *8; *see also Grocery Mfrs. Ass'n v. Sorrell*, 2014 WL, 2014 WL 12644264 at *5, *7 (D. Vt. Oct. 7, 2014) (allowing organizations that advocate for passage of the challenged state statute to participate as amici but not to intervene); *United States v. Apple, Inc.*, 2012 WL 4513541, at *2 (S.D.N.Y. Oct. 2, 2012).  State and local gas bans are a topic on which many groups and individuals have strong views—the Ninth Circuit appeal over Berkeley's ban saw eight merits-stage amicus briefs, plus nine more at the *en banc* petition stage, *Cal. Rest.*, No. 21-16278 (9th Cir.) (ECF Nos. 17, 32-34, 36, 38, 42, 60, 94, 100, 102, 105-106, 110-112, 123)—but that does

---

[1] Neither of the district court intervention decisions Proposed Intervenors cite were discussing the prospect of a permanent injunction after resolution of the merits.  *See United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 419 (S.D.N.Y. 2018) (proposed consent decree); *New York v. U.S. Dep't of Health & Hum. Servs.*, 2019 WL 3531960, at *6 (S.D.N.Y. Aug. 2, 2019) (preliminary injunction).

not mean they should all be parties to a suit challenging government action.  Like that of any other

interested member of the public, Proposed Intervenors' general interest in having the law on the

books is better expressed as an amicus.

> **B.      The City Can and Will Adequately Defend Its Own Law, Which Militates
> Against Permissive Intervention.**

Proposed Intervenors concede that the City is able and willing to represent their interest in

defending the gas ban.  Dkt. 24 at 19.  And they admit that "the fundamental legal question" they

wish to address "is identical" to the question the parties are already litigating: "whether Local

Law 154 is preempted by federal law."  *Id.* at 16.  That is reason enough to deny intervention.

Although a lack of adequate representation is not required to grant permissive intervention,

having adequate representation is sufficient to deny permissive intervention.  *Floyd*, 770 F.3d at

1057 (for intervention as of right and by permission alike, "fail[ing] to satisfy *any one* of the[]

four" factors "is a sufficient ground to deny the application" (attribution omitted)); *accord Bldg.*

*& Realty Inst.*, 2020 WL 5667181, *6 (same).  And courts have repeatedly recognized that an

existing party's adequate representation "militate[s] against" permissive intervention, even though

the court may still decide to allow intervention for other reasons.  *E.g.*, *N.Y.C. Hous. Auth.*, 326

F.R.D. at 418; *New York v. Scalia*, 2020 U.S. Dist. LEXIS 115415, *14-15 (S.D.N.Y. June 29,

2020) ("Adequate representation *weights against* permitting intervention, but a court *may* still

permit it if the intervenors will help it resolve a dispute.") (emphasis added).  Cases that do so,

however, often depend on the proposed intervenors having important factual information or a

distinct perspective that makes their intervention of particular assistance and value to the court.

*E.g.*, *U.S. Dep't of Health & Hum. Servs.*, 2019 WL 3531960, at *6 (court "would benefit from

concrete factual submissions from the Proposed Intervenors" when evaluating preliminary relief);

*N.Y.C. Hous. Auth.*, 326 F.R.D. at 419 (allowing intervention "solely for the limited purpose of

opposing" a proposed consent decree because the proposed intervenors could provide "a fuller picture" for the court "to evaluate the fairness, reasonableness, and equities" of that settlement "and contribute to a just and equitable adjudication of the motion for approval").

The City's full-throated argument for dismissal on the merits, Dkt. 20, bears out Proposed Intervenors' concession that it is adequately representing their interests. That vigorous defense demonstrates that there is no need for private parties to jump in and defend the City's law for it. *See, e.g.*, *Grocery Mfrs. Ass'n* , 2014 WL 12644264, at *6 (denying intervention where there was "no evidence that the State Defendants lack the incentive, the ability, or the financial resources to defend" the challenged law). And given Proposed Intervenors' concession that "the fundamental legal question" they wish to litigate "is identical" to the one the City is already litigating, Dkt. 24 at 16, there is even less reason to allow Proposed Intervenors to pile on in support of the City's already-vigorous defense. *See Kearns v. Cuomo*, 2019 WL 5060623, at *6 (W.D.N.Y. Oct. 9, 2019) (denying permissive intervention where the "ultimate objective of the . . . proposed intervenors is being vigorously and competently pursued by Defendants as represented by the New York State Attorney General and Solicitor General"); *Great Atl. & Pac. Tea Co. v. Town of East Hampton*, 178 F.R.D. 39, 43, 45 (E.D.N.Y. 1998) (denying permissive intervention because "the nature and extent of the Group's interest in defending the validity of the [challenged law] is identical to that of the Town and both seek the same ultimate outcome"); *accord Commack Self–Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 103–05 (E.D.N.Y. 1996) (denying intervention as of right because moving organizations failed to establish their interest in the constitutionality of a state law would not be adequately represented by the Attorney General). The primary result of intervention here will be to double the briefing. *Compare* Dkt. 20 (City's 25-page memorandum arguing, based on EPCA's text and structure and the purported consequences of Plaintiffs'

interpretation, that EPCA does not preempt the City's gas ban), *with* Dkt. 23-1 (Proposed Intervenors' proposed 25-page memorandum arguing essentially the same thing).

What is more, Proposed Intervenors' interest in this case—and rationale for intervening as a party—is not meaningfully different from that of any other individual or group who favors and expects to benefit from the challenged law.  The lack of any limiting principle "could open the floodgates to other requests for permissive intervention by similarly interested parties." *Kearns,* 2019 WL 5060623, at *6 (denying permissive intervention).  That would either "ultimately delay the litigation and present obstacles to its manageability," *id.*, or require this Court to draw arbitrary lines between who may participate as a party and who is limited to amicus participation.  *See SEC v. Bear, Stearns & Co. Inc.*, 2003 WL 22000340, at *4 (S.D.N.Y. Aug. 25, 2003) (denying permissive intervention where the court would otherwise "be logic-bound to allow all . . . interested members of the public with differing viewpoints to intervene").  Proposed Intervenors' interest in the gas ban is no different in kind from that of many other individuals and groups, and their claimed factual knowledge (including of the legislative process) has nothing to do with resolving this suit.  *See Bldg. & Realty Inst.*, 2020 WL 5667181, at *7 (denying permissive intervention where the proposed intervenor would not "*significantly* contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented" because it did not "offer a unique perspective" and would "merely underline issues already raised" by the parties (cleaned up)); *Apple, Inc.*, 2012 WL 4513541, at *2 (noting that "[c]ourts . . . deny permissive intervention for those who seek merely to advance their own view as to what might be preferable for the public").

This case is thus a far cry from cases that allow intervention despite adequate representation based on the relevant, specialized contributions the intervenors could bring to the table.  *See, e.g.*,

*Hum. Servs. Council of N.Y. v. City of New York*, 2022 WL 4585815, at *5 (S.D.N.Y. Sept. 29, 2022) (proposed intervenor's "firsthand knowledge of labor peace negotiations and its constituents' experience may lead to a more complete factual record"); *Health & Hum. Servs.*, 2019 WL 3531960, at *6; *N.Y.C. Hous. Auth.*, 326 F.R.D. at 419.  Proposed Intervenors have nothing of the sort here, where no facts are in dispute and familiarity with the legislative record is of no value, and so they cannot be expected to help the Court with—let alone "*significantly* contribute to*"—resolving this dispute.  *Bldg. & Realty Inst.*, 2020 WL 5667181, at *7 (attribution omitted).  That is more than sufficient to deny permissive intervention.

### C.     Proposed Intervenors Lack a "Protectable Legal Interest" in the Lawsuit.

Though there is no need to reach the issue, Proposed Intervenors' lack of a legally protectable interest in this action independently warrants denying intervention.   Proposed intervenors must have "a legally protectable interest"—one "sufficient to grant them the benefits and burdens of status as a party."  *Floyd*, 770 F.3d at 1060; *see also id.* at 1058, 1062 (affirming the denial of permissive intervention for failing to satisfy this requirement).  To be "cognizable under Rule 24," an interest "must be direct, substantial, and legally protectable."  *Id.* at 1060 (cleaned up); *cf. Bldg. & Realty Inst.*, 2020 WL 5667181, at *7 (legal "futility is a proper basis for denying a motion to intervene" (attribution omitted)).

After all, Rule 24(b)(1)'s plain text requires (as relevant here) that a would-be permissive intervenor have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1); *see also* Fed. R. Civ. P. 24(c) (requiring the would-be intervenor to "set[] out the claim or defense for which intervention is sought" in a proposed pleading).  "The words 'claim or defense' manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit, as is confirmed by Rule 24(c)'s requirement" of a proposed pleading. *Diamond v. Charles*, 476 U.S. 54, 76-77 (1986) (O'Connor,

J., concurring in part and concurring in the judgment); *Apple, Inc.*, 2012 WL 4513541, at *1 (same) (citing *Diamond v. Charles*, 476 U.S. at 76-77). Permissive intervention thus "plainly does require an interest sufficient to support a legal claim or defense," and so a would-be intervenor with "no actual, present interest that would permit [it] to sue or be sued by [the parties], or anyone else, in an action sharing common questions of law or fact with those at issue in th[e] litigation" is not eligible for permissive intervention. *Id.* at 77; *see also See* Moore's Fed. Practice § 24.11 ("Accordingly, the goal of preventing *a multiplicity of suits* that involve common questions of law or fact should be central in any decision to grant or deny permissive intervention." (emphasis added)). That understanding of "claim or defense" aligns with how those terms are used throughout the Civil Rules; in rule after rule, they refer to the claims and defenses that parties can bring and courts can adjudicate, and not to mere arguments in support of an outcome. *See, e.g.*, Fed. R. Civ. P. 50(a)(1) (after "resolv[ing] the issue against [a] party" at trial, the court may grant "judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue"); Fed. R. Civ. P. 56(a) (authorizing summary judgment on a "claim or defense" or "part of [a] claim or defense").[2]

Here, Proposed Intervenors have "no 'direct stake' in the outcome" of this case; they face no prospect of being "ordered . . . to do or refrain from doing anything." *See Hollingsworth v. Perry*, 570 U.S. 693, 705-06 (2013).[3] Rather, their "only interest" is "to vindicate the [statutory] validity of a generally applicable [New York City] law." *Cf. id.* at 706. That is a quintessential

---

[2] *See also, e.g.*, Fed. R. Civ. P. 8; Fed. R. Civ. P. 10; Fed. Civ. P. 11(b)(2) ("claims, defenses, and other legal contentions"); Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 14(a)(2) ("Third-Party Defendant's Claims and Defenses"); Fed. R. Civ. P. 23(a)(3) ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); Fed. R. Civ. P. 23(c)(1)(B) ("class claims, issues, or defenses").

[3] No matter the outcome of this case, NY Geothermal Energy Organization will remain free to promote the geothermal industry and the sale of its products. WE ACT for Environmental Justice likewise will not be precluded from taking any action on behalf of its members, including promoting electrification of rental housing.

"generalized grievance" that the Article III judiciary has no business adjudicating.  *See id.*  At bottom, there is no justiciable controversy between Plaintiffs and Proposed Intervenors.  Plaintiffs have no claim they could bring against Proposed Intervenors.  And likewise, Proposed Intervenors have no "defense" to assert, no legally protectable interest, no claim against Plaintiffs, and no ability to redress Plaintiffs' injuries.  *See Diamond*, 476 U.S.  at 76-77 (concurring opinion) ("Dr. Diamond simply has no claim or defense in this sense; he asserts no actual, present interest that would permit him to sue or be sued . . .").  That Proposed Intervenors have an argument for why the defendant should win does not give them a "defense" within the meaning of Rule 24(b)(1)(B).

Proposed Intervenors note that some district courts have nonetheless declined to read Rule 24(b)(1)(B)'s "claim or defense" requirement "in a technical sense," Dkt. 24 at 14 (attribution omitted), but those cases did not state and could not have stated a general rule allowing anyone with a broad "interest" in the subject matter to intervene.  Nonprecedential district court decisions cannot override either Rule 24(b)(1)(B)'s plain text or the Second Circuit's binding precedent requiring a "legally protectable interest," *Floyd*, 770 F.3d at 1060.  *See also Comcast of Conn./ Ga./ Mass./ N.H./ N.Y./ N.C./ Va./ Vt., LLC v. Vt. Pub. Util. Comm'n*, 2018 WL 11469513, at *5 (D. Vt. Feb. 8, 2018) (concluding that "[t]he 'claim or defense' contemplated by [Rule 24(b)] is best understood as a reference to an Article III case or controversy, which exists only if the dispute meets constitutional justiciability requirements, including standing." (quoting 6-24 Moore's Federal Practice—Civil § 24.03[2][d] (3d ed. 2017))); *Hughes v. Abell*, 2014 WL 12787807, at *4 (D.D.C. Feb. 10, 2014) ("[P]ermitting a party without standing to intervene—and thus to participate in the lawsuit as any other party—could be fraught with jurisdictional problems. . . . Someone who is not quite a party with standing but who is nevertheless permitted to participate in a lawsuit is usually called an amicus curiae, not an intervenor.").

In any event, while the Court need not decide this issue, the generalized nature of Proposed Intervenors' interest in defending the City's law weighs against allowing permissive intervention.

### D.     The Potential for Undue Delay and Prejudice to Plaintiffs Weighs Sharply Against Permissive Intervention.

Intervention will lead to increased costs, burden, and delay in resolving this suit. *Great Atl. & Pac.*, 178 F.R.D. at 45 ("Additional parties always take additional time." (attribution omitted)). Proposed Intervenors' motion is already burning resources. Instead of seeking leave to file an amicus brief (to which Plaintiffs would consent within reason, as they did for the NRDC), Proposed Intervenors' decision to insist on becoming parties has already forced Plaintiffs to respond and the Court to decide the issue. And if intervention is granted on Proposed Intervenors' terms, Plaintiffs will have to file a brief in opposition to a second, duplicative motion to dismiss— and presumably will have to respond to duplicate motions in any future stage of the case, too.[4] The Court will also have to address both motions to dismiss—unlike an amicus brief, which the Court (and parties) may consider to the extent relevant or helpful but need not address. That intervention threatens to double the briefing in this case for little (if any) benefit is ample reason to deny it. *See Pitney Bowes*, 25 F.3d at 73 ("The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'").

But the danger is not just excessive briefing. Parties, of course, also have more ability to complicate a case or delay resolution than do amici. They can serve discovery, file both dispositive and nondispositive motions, object to settlement, and more. Proposed Intervenors are already

---

[4] Proposed Intervenors suggest that their proposed motion to dismiss can be determined on the same schedule as the City's, Dkt. 24 at 13, and thus will not cause any delay. But they moved to intervene on the same day as the City moved to dismiss. It should not fall to Plaintiffs to prevent the delay Proposed Intervenors are causing by Plaintiffs having to brief not only the City's motion to dismiss and the intervention issue, but also an extra motion to dismiss that is not yet (and may never be) properly before the Court, all at the same time.

trying to turn the background provided in the introduction to Plaintiffs' complaint into a fact dispute, *see* Dkt. 24 at 18—without any reason to think those background facts can change the outcome of the dispositive preemption issue. Giving Proposed Intervenors the rights of parties to this case comes with the risk that they will bog it down in pointless discovery on irrelevant factual issues. Courts routinely turn away proposed intervenors who, as here, would inject "extraneous" issues. *Bldg. & Realty Inst.*, 2020 WL 5667181, at *7 (attribution omitted) (collecting cases); *Kearns*, 2019 WL 5060623, at *6 (denying intervention where the proposed intervenor would "interject collateral issues" and thus "unnecessarily delay resolution of the litigation").

*   *   *

The Court's discretion around permissive intervention includes the discretion to deny intervention, even when all the requirements are satisfied. Fed. R. Civ. P. 24(b)(1) ("the court *may* permit" (emphasis added)); *see Floyd*, 770 F.3d at 1057; 7C Wright & Miller, Federal Practice and Procedure § 1913 ("[E]ven though . . . the requirements of Rule 24(b) are . . . satisfied, the court may refuse to allow intervention."); *Pitney Bowes*, 25 F.3d at 73 (denial of permissive intervention rarely, if ever, reversed). Here, although Plaintiffs do not object to timeliness, all other factors and practical considerations militate against intervention. The Court has broad discretion to deny the motion and should do so.[5]

## II.     If Intervention Is Allowed, the Court Should Limit The Scope and Require Joint Briefing.

The Court's "discretion to refuse intervention altogether" comes with the discretion to "specify the conditions on which it will allow the applicant to become a party." Wright & Miller,

---

[5] Proposed Intervenors tout the order allowing intervention in *Rivera v. Washington State Building Code Council*, a case involving similar legal issues, but there, the plaintiffs consented to intervention, and the Court thus granted the unopposed motion in a cursory order. *Rivera v. Washington State Building Code Council*, No. 23-cv-03070 (E.D. Wash.), ECF Nos. 28 & 34.

*supra*, § 1913.  "In this way it can order the proceedings so as to minimize delay and prejudice to the existing parties."  *Id.*; *see also, e.g.*, *N.Y.C. Hous. Auth.*, 326 F.R.D. at 418 (exercising discretion to limit the scope of intervention).  Any intervention here should come with careful limits in light of the concerns discussed above.

### A.    To Avoid Doubling the Burden on Plaintiffs and the Court, All Defendants Should Have to File a Joint Brief, as Plaintiffs Do Now.

As discussed, allowing intervention as a party magnifies briefing, increases costs, and imposes burdens on the other parties and the Court, all of which can already be seen in this case. *Supra* pp. 13-14.  Particularly because the City is already adequately defending its law, and the legal issue is admittedly "identical," Dkt. 24 at 16, it is a waste of this Court's time and an undue burden on Plaintiffs to allow double the briefing.

Accordingly, if the Court were inclined to allow intervention, Plaintiffs respectfully request that all party defendants be required to file a joint brief, as is true now of Plaintiffs.  Having one brief for plaintiffs and one for defendants would mitigate the additional burden on Plaintiffs and on this Court.  On the other hand, allowing Proposed Intervenors and the City to file separate briefs despite their close alignment on the fundamental legal issue would in effect allow them to evade this Court's briefing limits.  Parties have to choose which arguments to pursue within the confines of page limits, but allowing double briefing avoids this discipline.  Because Proposed Intervenors have chosen voluntarily to intervene, and the City has not opposed, all defendants should be required to file all briefs, motions, or other filings jointly.[6]

### B.    To Avoid the Risk of Delay and Prejudice to Plaintiffs, Proposed Intervenors Should Be Limited to Dispositive Motions Briefing.

Likewise, allowing unrestricted intervention gives the intervenor the ability to act as a

---

[6] To be clear, Plaintiffs would not object to a joint brief including sections joined by less than all the parties; Plaintiffs' point is simply that all the parties on one side should file a single brief within the page limits.

party, including by seeking discovery and filing motions. And an intervenor's arguments, objections, and motions must be responded to by the parties (at risk of forfeiture) and ruled on by the Court, as with those of any party. The ability of an intervenor to delay, expand, or otherwise affect the progress of a case is thus a completely different animal from that of an amicus. This could lead to sideshow litigation, as Proposed Intervenors' emphasis on allegedly disputed issues of fact, policy issues, and purported practical consequences of the law foreshadows. Proposed Intervenors may well seek discovery on those (irrelevant) issues or otherwise use their party status to disrupt and delay this case.

Plaintiffs therefore request that if this Court allows intervention, it limit the scope to dispositive motions briefing. That will help keep the litigation streamlined and moving forward. *See N.Y.C. Hous. Auth.*, 326 F.R.D. at 418 (allowing parties to intervene permissively only "for the limited purpose of opposing" a proposed consent decree). This would maintain a balance between allowing Proposed Intervenors to weigh in on the legal issue and "the need to ensure that the lawsuit does not 'become unnecessarily complex, unwieldy or prolonged.'" *N.Y.C. Hous. Auth.*, 326 F.R.D.at 415 (alteration incorporated) (quoting *Pitney Bowes*, 25 F.3d at 69); *see also Floyd*, 770 F.3d at 1057.

*   *   *

To be clear, Plaintiffs do not believe intervention, even if limited to joint briefing and in scope, is warranted here, in light of the City's adequate representation on the legal issue and its shared objective, the lack of benefit to the Court, Proposed Intervenors' generalized interest, and the probability of added cost, burden, and delay.

## CONCLUSION

The Proposed Intervenors' motion should be denied.

Dated: March 15, 2024

Caroline M. Walters (NY Bar No. 5780739)
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
cwalters@reichmanjorgensen.com

Brian C. Baran (*pro hac vice*)
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
bbaran@reichmanjorgensen.com

Respectfully submitted,

*/s/ Sarah O. Jorgensen*

Sarah O. Jorgensen (*pro hac vice*)
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
sjorgensen@reichmanjorgensen.com

Courtland L. Reichman (*pro hac vice*)
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
creichman@reichmanjorgensen.com

*Attorneys for Plaintiffs*

17